STATE OF CONNECTICUT *v.* LLOYD E. WEBB
(12946)

DUPONT, C. J., and LANDAU and SCHALLER, Js.

Argued February 21—decision released May 2, 1995

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Timothy J. Liston,* senior assistant state's attorney, and, on the brief, *John T. Redway,* state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[1] The defendant claims that (1) the trial court improperly instructed the jury on self-defense, (2) the statute defining first degree reckless manslaughter is unconstitutionally vague as applied in this case, and (3) the trial court abused its discretion in permitting the introduction of the defendant's prior convictions as impeachment evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 17, 1991, the defendant and several other men were at BC's Pub in Durham drinking beer and playing pool. The defendant and Harold Zajechowski became involved in a dispute. The two went outside to fight but, after the defendant displayed

[1] General Statutes § 53a-55a (a) provides: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

General Statutes § 53a-55 (a) provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

a hunting knife, Zajechowski went back into the bar. The argument resumed and subsided several times and eventually the bar owner asked the defendant to leave. The defendant left the bar accompanied by Peter Bishop.

When the defendant reached his pickup truck, he noticed that a cooler of beer he had left in the back was missing. The defendant, believing that Zajechowski had taken it, tried to return to the bar, but Bishop dissuaded him. The defendant drove home and went inside while Bishop waited in the truck. The defendant returned to the truck carrying beer, cigarettes and a twelve-gauge shotgun.

The defendant and Bishop drove back to the bar just before 1 a.m. to retrieve a sweatshirt that the defendant had left behind. Before entering the bar, the defendant told Bishop he wanted to "kick some ass." The defendant retrieved his sweatshirt and returned to the truck. The defendant noticed Zajechowski leaving the bar accompanied by Donald Clarke and Michael Davis. The three men entered a Ford pickup truck and drove off, with Clarke driving. The defendant and Bishop followed.

After several miles, Clarke noticed he was being followed. He accelerated but was unable to lose the defendant. Clarke put on a pair of gloves and retrieved an aluminum baseball bat from behind his seat. He stopped the truck on Brick Lane, and said that he was going to "put an end to this stupid shit right now." Clarke exited the truck carrying the bat, with Zajechowski following behind. As Clarke approached the defendant's vehicle, he told Zajechowski to get back in the truck.

Clarke struck the driver's side window of the defendant's truck with the bat, causing it to shatter. He demanded an explanation as to why the defendant was

following him. Clarke then struck the truck two more times, once on the roof of the cab and once on the rear area of the cab. The defendant opened the door of the truck and reached behind the seat for his shotgun. He then fired a single shot which struck Clarke in the chest, killing him.

I

The defendant first claims that the trial court improperly instructed the jury on self-defense. Specifically, the defendant argues that the court substituted a wholly objective standard, where both a subjective and objective analysis is required. Because the defendant did not adequately preserve this claim at trial, he can prevail only if the claim meets the conditions set out in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 4185.[2]

Under *Golding*, a defendant can prevail on a claim not preserved for trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged

[2] Practice Book § 4185 provides: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

constitutional violation beyond a reasonable doubt."
*State* v. *Golding,* supra, 213 Conn. 239–40. We conclude
that the defendant cannot satisfy the third prong of
*Golding.*[3]

"The standard of review to be applied to a claim of
an improper instruction on the elements of self-defense
is whether it is reasonably possible that the jury was
misled. *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d
481 (1989); *State* v. *Corchado,* 188 Conn. 653, 660, 453
A.2d 427 (1982). The charge is to be read as a whole;
sections are not to be judged in isolation from the over-
all charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d
243 (1978). The charge is not to be 'critically dissected
in a microscopic search for possible error.' *State* v. *Fore-
shaw,* 214 Conn. 540, 548, 572 A.2d 1006 (1990). The
test to be applied to any part of a charge is whether
the charge as a whole presents the case to the jury in
a manner to prevent injustice. *State* v. *Maturo,* 188
Conn. 591, 599, 452 A.2d 642 (1982). We review the
whole charge to determine whether it sufficiently
guided the jury to a proper verdict. *State* v. *Shaw,* 24
Conn. App. 493, 499, 589 A.2d 880 (1991)." *State* v.
*Hester,* 28 Conn. App. 469, 472, 612 A.2d 120 (1992);
*State* v. *Jenkins,* 29 Conn. 262, 272–73, 614 A.2d 1249,
cert. denied, 224 Conn. 916, 617 A.2d 171 (1992).

It is well settled that a jury's evaluation of a claim
of self-defense has both subjective and objective ele-
ments. *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d
534 (1990); *State* v. *Corchado,* supra, 188 Conn. 663;
*State* v. *Williams,* 25 Conn. App. 456, 464, 595 A.2d
895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).
"In evaluating a claim of self-defense, a trier of fact
must first examine the danger that a defendant claims

---

[3] "We . . . remain free to dispose of the claim 'by focusing on which-
ever condition is most relevant in the particular circumstances.' " *State*
v. *Watlington,* 216 Conn. 188, 192, 579 A.2d 490 (1990), quoting *State* v.
*Golding,* supra, 213 Conn. 240.

he faced. It is clear that here '[t]he statute focuses on the [defendant] claiming self-defense. It focuses on what *he* reasonably believes under the circumstances . . . .' (Emphasis in original.) *State* v. *Corchado*, [supra, 663]." *State* v. *Williams*, supra, 464. " 'The jury must view the situation from the perspective of the defendant. . . . [T]he defendant's belief [however] ultimately must be found to be reasonable.' " *State* v. *Hall*, supra, 586 n.7, quoting *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984). "In evaluating the defendant's belief that he was faced with the imminent use of deadly physical force, the jury must first determine whether the defendant believed that an attack was imminent, and then it must determine whether that belief was reasonable." *State* v. *Bellino*, 31 Conn. App. 385, 392–93, 625 A.2d 1381 (1993), appeal dismissed, 228 Conn. 851, 635 A.2d 812 (1994) (cert. improvidently granted).

The crux of the defendant's argument is that the trial court's instruction on self-defense caused the jury to believe that it should evaluate the defendant's conduct by a solely objective test. We find this not to be the case. In its instructions, the trial court presented both the subjective and the objective parts of the test to be applied. The court did not omit the subjective part of the test; rather, it instructed the jury to "measure the justifiability of the defendant's actions from the subjective standpoint." The judge stressed this concept and repeatedly referred to the application of a two part, subjective and objective test. The court instructed the jury that it must "[d]etermine whether the defendant believed that the use of deadly physical force was necessary and then determine whether that belief and use of deadly physical force was reasonable under the circumstances. . . . The danger perceived and the degree of force used are both objective and subjective tests. The objective part is that the perceived danger and the

degree of force are one in which a reasonably prudent person in the same circumstances would have believed or used."

"A party is not entitled to a charge which is beyond criticism in every particular. . . . Rather, a charge is adequate if it is legally correct and present[s] the case to the jury in a just and fair manner." (Citations omitted; internal quotation marks omitted.) *State* v. *Knighton*, 7 Conn. App. 223, 231, 508 A.2d 772 (1986). "We conclude that the trial court's instructions, as a whole, properly included both the subjective and objective portions of the self-defense test. It properly directed the jury to consider the defendant's personal belief about the danger he was facing . . . ." *State* v. *Jenkins*, supra, 29 Conn. App. 274. The defendant's claim, therefore, fails under the third prong of *Golding*, because the alleged violation does not clearly exist. "Further, because there was no manifest injustice, the defendant's claim does not warrant plain error review." *State* v. *Boles*, 223 Conn. 535, 543, 613 A.2d 770 (1992).

## II

The defendant was convicted of manslaughter in the first degree with a firearm; General Statutes § 53a-55a; the elements of which are the commission of manslaughter in the first degree under General Statutes § 53a-55 and the use or threatened use of a firearm. The defendant was found guilty of committing manslaughter under § 53a-55 (a) (3) while using a firearm. He claims that the statute defining first degree reckless manslaughter is unconstitutionally vague as applied in this case. Specifically, the defendant argues that § 53a-55 (a) (3) is void for vagueness under the fifth and fourteenth amendments to the United States constitution[4] and article first, §§ 8 and 9, of the Con-

[4] The fifth amendment to the United States constitution provides in pertinent part: "No person shall be . . . deprived of life, liberty, or prop-

necticut constitution,[5] because the trial court failed to distinguish the recklessness element of manslaughter in the first degree from the ordinary recklessness element of manslaughter in the second degree. General Statutes § 53a-56.[6] Although the defendant concedes that he did not properly preserve this claim at trial, he seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine. Practice Book § 4185. We note that this is not the first time a claim of unconstitutional vagueness has arisen under § 53a-55 (a) (3). See *State* v. *Sawyer*, 32 Conn. App. 854, 632 A.2d 372, cert. denied, 228 Conn. 911, 625 A.2d 1230 (1993); *State* v. *Pitt*, 28 Conn. App. 825, 612 A.2d 60 (1992).

"To enable us to review a claim that a statute is facially vague, the record needs to reflect only the fact that the defendant was convicted under the statute in question. To enable us to review a claim that a statute is vague as applied, the record must further reflect the conduct that formed the basis of the defendant's conviction." *State* v. *Indrisano*, 228 Conn. 795, 800, 640 A.2d 986 (1994). The record being sufficient, we advance our analysis to the second prong of *Golding*,

erty, without due process of law . . . ."

The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[5] Article first, § 8, of the Connecticut constitution provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[6] General Statutes § 53a-56 (a) provides in pertinent part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

namely, whether the claim is of constitutional magnitude alleging the violation of a fundamental right.

The defendant's claim fails to satisfy the second prong of *Golding* because it lacks constitutional magnitude. His claim that the trial court failed to provide the jury with a clear definition of the difference between the two degrees of manslaughter is nothing more than an unpreserved claim of instructional error.

"Just as every claim of evidentiary error by the trial court is not truly constitutional in nature . . . every claim of instructional error is not truly constitutional in nature." (Citation omitted.) *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993). The defendant's claim that the trial court failed to distinguish between the two degrees of manslaughter does not amount to a claim that the statute was unconstitutionally vague as applied. "Robing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature. See *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988)." *State* v. *Ulen*, 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). The defendant's claim was directed solely toward the trial court's charge to the jury. The defendant claimed that the court failed to distinguish between the recklessness requirement of the two manslaughter statutes and that it failed to define the aggravating factors in manslaughter in the first degree. The defendant's claim does not focus on the vagueness of the statute; rather, it centers around the trial court's instructions regarding the statute. "[I]t strains the meaning of constitutional claims to say that this claimed instructional error is constitutional in nature." *State* v. *Walton*, supra, 65.

"Nor is the defendant's claim reviewable as plain error under Practice Book § 4185. Plain error review

' "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." ' *State* v. *King*, 216 Conn. 585, 591, 583 A.2d 896 (1990). The claimed error here is not so egregious or obvious as to merit such review. *State* v. *Gagnon*, 18 Conn. App. 694, 712, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989)." *State* v. *Sawyer*, supra, 32 Conn. App. 856–57.

### III

Finally, the defendant claims that the trial court abused its discretion in permitting the introduction of the defendant's prior convictions as impeachment evidence. Specifically, the defendant argues that his 1978 convictions for conspiracy to commit robbery in the second degree, assault in the second degree, robbery in the second degree, robbery in the third degree, and his 1982 conviction of larceny in the second degree should not have been allowed as impeachment evidence because of their remoteness. We do not agree.

"The credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year. See General Statutes § 52-145 (b); *State* v. *Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)." *State* v. *Sauris*, 227 Conn. 389, 409, 631 A.2d 238 (1993). "Three factors have usually been identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time." *State* v. *Nardini*, 187 Conn. 513, 522,

447 A.2d 396 (1982). We will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion. *State* v. *Braswell,* supra, 307; *State* v. *Nardini,* supra, 521–22.

"While leaving the matter to the general discretion of the trial court, [our Supreme Court has] sanctioned a general guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence. Rule 609 (b) establishes a ten year limitation from conviction or *release from resulting confinement* upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect. *State* v. *Nardini,* supra, [187 Conn.] 525–26. . . . [W]e recognize that convictions having special significance on the issue of veracity may surmount the standard ten year bar; id., 526 . . . ." (Emphasis added.) *State* v. *Sauris,* supra, 227 Conn. 409–10.

In this case, it was within the discretion of the trial court to admit the defendant's prior convictions because it determined that their probativeness as to the defendant's veracity sufficiently outweighed any prejudice. See *State* v. *Cooper,* 227 Conn. 417, 436, 630 A.2d 1043 (1993). Each of the prior convictions admitted by the trial court reflected a crime of larcenous intent and thus each was probative of "dishonesty in the general sense." Id. Furthermore, "the prior conviction[s] involved [crimes] that significantly differed from the crime charged and bore heavily on the defendant's credibility." *State* v. *Bailey,* 32 Conn. App. 773, 784, 621 A.2d 333 (1993).[7]

[7] We note, calculating the age of the convictions from the October, 1983 release date, that the convictions were less than ten years old at the time of trial.

We conclude that the trial court's admission of the defendant's prior convictions was a proper exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.