STATE OF CONNECTICUT *v.* KENNETH PRUTTING
(13588)

Foti, Schaller and Hull, Js.

152

Argued October 23, 1995—decision released January 23, 1996

*Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen Sedensky,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of first degree manslaughter in violation of General Statutes § 53a-55 (a) (3),[1] carrying a pistol without a permit in

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

violation of General Statutes §§ 29-35[2] and 29-37 (b),[3] and criminal possession of a pistol in violation of General Statutes § 53a-217.[4] The defendant claims that the trial court improperly (1) admitted portions of a witness' signed statement into evidence as a prior inconsistent statement, (2) precluded the introduction of a prior conviction of a state's witness as impeachment evidence and permitted the introduction of the defendant's prior convictions as impeachment evidence, thereby denying the defendant his due process right to a fair trial by applying different standards for the admission of impeachment evidence offered by the state, (3) instructed the jury on manslaughter in the first degree as a lesser included offense, (4) compelled the defendant to begin trial in prison clothes and required the defendant to be shackled during trial, (5) refused to grant the defendant's requests for continuances and (6) denied the defendant's motion for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 22, 1989, the defendant, Kenneth Prutting, was in an argument on the premises of the R Place Cafe in Bridgeport. His brother, Jimmy Prutting, was present during the argument. The owner of the R

---

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[3] General Statutes § 29-37 (b) provides in relevant part: "Any person violating any provision of subsection (a) of section 29-35 may be fined not more than one thousand dollars and shall be imprisoned not less than one year nor more than five years, and, in the absence of any mitigating circumstances as determined by the court, one year of the sentence imposed may not be suspended or reduced by the court. . . ."

[4] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and has been convicted of . . . a class B felony . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

Place Cafe, Frank Messenger, told the defendant and his brother to leave. When they refused, Messenger shoved the defendant and his brother out the front door.

The defendant reentered the premises moments later with a gun and fired two shots. Moving to the doorway, the defendant fired two more shots, one of which killed the victim, John Fitzmorris.

I

The defendant first claims that the trial court improperly admitted portions of a witness' signed statement as a prior inconsistent statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant argues only that the statement was not inconsistent with the witness' testimony at trial. We disagree.

"A prior inconsistent statement can be used for substantive purposes . . . if (1) the statement is written and is signed by the declarant, (2) the declarant has personal knowledge of the facts stated, and (3) the declarant testifies at trial and is subject to cross-examination." *State* v. *Hermann*, 38 Conn. App. 56, 67, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995), citing *State* v. *Whelan*, supra, 200 Conn. 753.

The following additional facts are relevant to this claim. The state called Roger Hatfield as a witness. Hatfield testified that he was with the victim, whom he had known for about five years, at the R Place Cafe on September 22, 1989, when Fitzmorris was shot to death. When asked to describe what led up to the shooting, Hatfield stated: "First off, I got to make a statement because that statement I made was wrong." The state then produced the statement to which Hatfield was referring, and Hatfield identified it as the statement that he gave to police on September 27, 1989.

Hatfield proceeded to testify that, on September 22, 1989, he and the victim had argued at the R Place Cafe, and another individual became involved. A fight then began, but Hatfield sat down and no longer involved himself. Messenger came from the back of the bar and was hit with a glass or bottle. Hatfield testified that he then heard shots from the front and the back of the bar. Hatfield witnessed an individual with a moustache and goatee fire shots from near the doorway of the cafe, and he saw the victim hit the floor. Hatfield further testified that he could identify the person who fired the shots from the doorway if he saw the person again, but when the state asked Hatfield if he saw that person in the courtroom, Hatfield replied that he did not.

The state then asked Hatfield about the statement he gave to police on September 27, 1989. Hatfield recalled being shown an array of numbered photographs and telling the police that either photograph five or six was a photograph of the person who shot Fitzmorris from the doorway. Hatfield also acknowledged telling police that he had not seen anyone with a gun other than the person at the front door and not telling police that shots were fired from the back of the bar. The police had asked Hatfield to mark on a diagram of the R Place Cafe where the person firing the gun was, and Hatfield had made only one mark, by the doorway. The state then offered Hatfield's September 27, 1989 statement to police as a prior inconsistent statement.

The defendant objected to the introduction of Hatfield's statement, arguing that because Hatfield did not testify that he saw anyone with a gun other than the person in the doorway that his testimony was not inconsistent with his statement to police that he had not seen anyone else with a gun. The defendant also asserted that Hatfield's testimony, that the person who fired

shots from the doorway was not in the courtroom, was not inconsistent with his statement that photograph five or six of the array was of the person who had fired the shots from the doorway. The trial court thereafter admitted as substantive evidence, over the defendant's objection, Hatfield's redacted September 27, 1989 statement.[5]

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admis-

---

[5] The redacted statement provided in pertinent part:

"Q. In your own words, tell me what happen[ed] leading up to the shooting.

"A. Me and Johnny Joe were at the bar drinking and we were fooling around. We were fooling around, we started exchanging words, and then it started getting serious. We stood there arguing and we almost got into it. Then this other guy came over and he started sticking up for Johnny Joe. I think it was over a beer. Then me and this other guy that stood up for Johnny Joe started to go at it. Then Johnny Joe tried to stop the two of us from going at it. I walked away and then Frank came over to where Johnny Joe and the rest of the guys were arguing. And as soon as Frank got over to them, Frank got hit in the head with a glass or a bottle. There were about four to six people there. My buddy held me from going there.

"Q. Who were the four to six people?

"A. The only ones I know were Johnny Joe and Frank. The other ones I only know by face.

"Q. Go on.

"A. Right after Frank got hit at least two shots went off. Johnny Joe fell to the floor.

"Q. Where was the man standing when he fired at least two shots?

"A. By the front door.

"Q. I'm showing you photo array number one, do you recognize the guy with the gun that shot Johnny Joe?

"A. I think it was five or six but I'm not sure.

"Q. What happen[ed] after Johnny Joe got shot?

"A. I ran near the back of the bar and I squatted down there. It was [quiet] for about a minute. I got back up and as soon as I got back up there were about four or five more shots fired and that's when I ran right out the backdoor.

"Q. Did you see who was shooting at this time?

"A. No, because they were coming from outside in the front of the bar.

"Q. About how many total shots were fired?

"A. About seven or eight shots.

"Q. Did you see anyone else with a gun?

"A. No."

The photographic array was also admitted as a full exhibit.

sibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Zollo*, 36 Conn. App. 718, 723, 654 A.2d 359, cert. denied, 234 Conn. 906, 650 A.2d 859 (1995). This standard does not vary for the court's determination of whether two statements are inconsistent. *State* v. *Laccone*, 37 Conn. App. 21, 28, 654 A.2d 805 (1995). " 'Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined.' " Id., quoting *State* v. *Whelan*, supra, 200 Conn. 748 n.4.

In this case, Hatfield made two statements describing what occurred at the R Place Cafe on September 22, 1989. We must determine whether the trial court abused its discretion in determining that the statements were inconsistent. At trial, Hatfield testified that shots were fired from the front and the back of the bar. In his statement to police, however, Hatfield did not mention shots coming from the back of the bar. In fact, Hatfield told police that he had not seen anyone with a gun other than the person in the front doorway. Moreover, police asked Hatfield to indicate on a diagram of the cafe where the shooter was when the shooter fired the gun, and Hatfield made a mark by the front doorway only.

Hatfield also testified that he did not see the person in the courtroom who had fired shots from the doorway in the courtroom, although the defendant was in the courtroom. In his statement to police, Hatfield had stated that photograph five or six in the array was of the shooter, although he added that he was not sure. Photograph five was of the defendant. We note that

the trial court could also have considered Hatfield's testimony at trial that "I got to make a statement because that statement I made was wrong."

"Inconsistencies may be shown not only by contradictory statements but also by omissions. . . . A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made." *State v. Whelan*, supra, 200 Conn. 748–49 n.4. Although Hatfield's statements were not diametrically opposed, we conclude that it was within the trial court's discretion to determine that the two statements were inconsistent. Considering Hatfield's testimony as a whole and its entire effect, we conclude that the trial court did not abuse its discretion in admitting Hatfield's statement to police as a prior inconsistent statement.

## II

The defendant next claims that the trial court improperly (1) precluded the introduction of a conviction of a state's witness as impeachment evidence and (2) permitted the introduction of four of the defendant's prior convictions as impeachment evidence and refused to limit references to the defendant's convictions as unnamed felonies. The defendant further claims that the trial court denied the defendant's due process right to a fair trial by applying different standards for the admission of impeachment evidence offered by the state and by the defendant. We find no merit in the defendant's claims.

"The credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year. See General Statutes § 52-145 (b); *State v. Braswell*, 194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985). . . . Three factors have usually been

identified as of primary importance in considering whether a former criminal conviction is to be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. *State* v. *Nardini,* 187 Conn. 513, 522, 447 A.2d 396 (1982). We will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Webb,* 37 Conn. App. 722, 731–32, 657 A.2d 711 (1995).

## A

The defendant specifically claims that the trial court improperly precluded the introduction of a state's witness' prior conviction of extortion as impeachment evidence. After the state called Messenger as a witness, the defendant sought to introduce Messenger's 1974 extortion conviction. The trial court concluded that the conviction was too remote to be admissible.

"While leaving the matter to the general discretion of the trial court, [our Supreme Court has] sanctioned a general guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence. Rule 609 (b) establishes a ten year limitation from conviction or release from resulting confinement upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect. . . . [W]e recognize that convictions having special significance on the issue of veracity may surmount the standard ten year bar . . . . *State* v. *Sauris,* [227 Conn. 389, 409–10, 631 A.2d 238 (1993)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Webb,* supra, 37 Conn. App. 732.

Messenger's conviction of extortion fell outside the general ten year guideline. While we recognize that a

conviction of extortion is a form of larceny and therefore has significance on the issue of veracity,[6] we conclude that the trial court did not abuse its discretion when it precluded the introduction of Messenger's nineteen year old conviction of extortion. "The trial court, because of its intimate familiarity with the case, is in the best position to weigh the relative merits and dangers of any proffered evidence." *State* v. *Geyer*, 194 Conn. 1, 13, 480 A.2d 489 (1984); *State* v. *Rivera*, 221 Conn. 58, 73, 602 A.2d 571 (1992).

Because the defendant was not entitled to the introduction of Messenger's prior conviction for impeachment purposes, the defendant's claim under the confrontation clause of the sixth amendment to the federal constitution also fails.[7] *State* v. *Carter*, 228 Conn. 412, 432, 636 A.2d 821 (1994).

B

The defendant next claims that the trial court improperly permitted the introduction of four prior convictions of the defendant that were more than ten years old. The defendant also claims that the trial court improperly refused to require the state to refer to the defendant's three robbery convictions as unnamed felonies.

Our review of the record reveals that the trial court permitted the state to impeach the defendant's credibility by introducing a 1993 conviction of an unnamed felony, a 1992 conviction of an unnamed felony, a 1984

---

[6] Convictions having special significance on the issue of veracity may surmount the standard ten year bar. *State* v. *Sauris*, supra, 227 Conn. 410. "[C]rimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements." (Internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 435, 630 A.2d 1043 (1993). "Our General Statutes § 53a-119 (5) defines extortion as a form of larceny." *State* v. *Garcia*, 7 Conn. App. 367, 372, 509 A.2d 31 (1986).

[7] Because the defendant provides no separate analysis for his claim under article first, § 8, of the Connecticut constitution, we do not address it. See *State* v. *Sauris*, supra, 227 Conn. 413 n.18.

conviction of robbery in the first degree, a 1982 conviction of robbery in the first degree, a 1982 conviction of robbery in the second degree and a 1981 conviction of an unnamed felony. Because the defendant's trial took place in 1993, only three of the convictions admitted as impeachment evidence were more than ten years old. We review the defendant's claim based on the trial court's admission of the three prior convictions more than ten years old.

The trial court stated that the prior convictions were not too remote to be used as impeachment evidence. The court further stated that, because robbery involves a larcenous intent and the defendant was not charged with a crime similar to robbery, the state could specifically identify the robbery convictions. We conclude that the trial court did not abuse its discretion by admitting the defendant's prior convictions as impeachment evidence and by refusing to require the state to refer to the defendant's prior robbery convictions as unnamed felonies.

We have held that it is within the trial court's discretion to admit a defendant's prior conviction of robbery under the exception to the ten year bar for convictions having special significance on the issue of veracity. See *State* v. *Irving*, 27 Conn. App. 279, 290, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992). The admission of the defendant's 1981 conviction of an unnamed felony, however, does not clearly fall within the exception. The record in this case does not disclose whether the unnamed felony had the special significance on the issue of veracity needed to overcome the ten year bar.[8] "We do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has

---

[8] The trial court record available to us does not reveal the specific charge involved in the 1981 unnamed felony.

satisfied its burden of demonstrating to the contrary." *State* v. *Crumpton*, 202 Conn. 224, 231, 520 A.2d 226 (1987). Because nothing in the record indicates otherwise, we conclude that the trial court applied the correct legal standard. Id., 232. We, therefore, cannot say that the trial court abused its discretion by permitting the state to introduce the three convictions that were more than ten years old.

The trial court also correctly concluded that the mention of the robbery convictions in this case did not create the high degree of prejudice that exists where a prior crime is similar to the offense being tried. *State* v. *Nardini*, supra, 187 Conn. 522. In this case, the defendant was charged in the alternative with murder, attempted murder, and attempted assault in the first degree, as well as with carrying a pistol without a permit and criminal possession of a pistol. Furthermore, the robbery convictions reflected larcenous intent and, thus, were probative of dishonesty in the general sense. *State* v. *Crumpton*, supra, 202 Conn. 233; *State* v. *Webb*, supra, 37 Conn. App. 732. We conclude, therefore, that the trial court's decision to permit the state to identify specifically the defendant's prior convictions of robbery was within its discretion.

The defendant also claims that the trial court denied his due process right to a fair trial by applying different standards for the admission of impeachment evidence offered by the state and by the defendant. See *State* v. *Torres*, 210 Conn. 631, 645, 556 A.2d 1013 (1989). Because we have concluded that the trial court applied the appropriate standard for the admission of the state's and the defendant's impeachment evidence, this claim fails.

### III

The defendant next claims that the trial court improperly instructed the jury on manslaughter in the first

degree[9] as a lesser included offense of murder.[10] The defendant argues that manslaughter in the first degree requires the element of "circumstances evincing an extreme indifference to human life," which is not needed to commit the greater offense of murder, and that, therefore, the trial court deprived the defendant of his right to notice under article first, § 8, of the Connecticut constitution and the fourteenth amendment of the federal constitution. The defendant further argues that the trial court deprived him of his right to notice by instructing the jury on the lesser included offense absent a request from either party. We find no merit in the defendant's claim.

The defendant did not object to the jury charge at trial, and now asserts that he is entitled to appellate review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[11] On appeal, the claim must meet all four prongs of the *Golding* analysis to be successful. Id., 239–40. We have stated previously that "[w]e are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews*, 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

The third prong of the *Golding* analysis requires that "the alleged constitutional violation clearly exists and

---

[9] See footnote 1.

[10] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[11] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond

clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240. "When determining whether one crime is a lesser included offense of another crime, the reviewing court must consider whether 'it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . .' *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). Proof of a lesser included offense must not require proof of any element that is not needed to commit the greater offense. *State* v. *Castro*, 196 Conn. 421, 429, 493 A.2d 223 (1985)." *State* v. *Guess*, 39 Conn. App. 224, 237, 665 A.2d 126 (1995).

The defendant argues that § 53a-55 (a) (3) requires proof of the additional element of "circumstances." Our Supreme Court has stated, however, that the only difference between the elements of murder and manslaughter in the first degree pursuant to § 53a-55 (a) (3) is the requisite intent. *State* v. *Crafts*, 226 Conn. 237, 250, 627 A.2d 877 (1993). We cannot say, therefore, that "circumstances" is anything more than an integral part of the description of the required mental state for § 53a-55 (a) (3).[12]

It follows that "by virtue of General Statutes § 53a-45 (c)[13] a murder indictment is deemed to notify a defendant that he may be found guilty of homicide in any lesser degree than that charged." *State* v. *Maselli*,

a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239-40.

[12] In *State* v. *Rodriguez*, 180 Conn. 382, 403 n.17, 429 A.2d 919 (1980), our Supreme Court stated that the state of mind involved in § 53a-55 (a) (3) "requires recklessness and 'circumstances evincing an extreme indifference to human life.' This last phrase indirectly bears upon the defendant's state of mind."

[13] General Statutes § 53a-45 (c) provides: "The court or jury before which any person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 54-46a is tried may find such person guilty of homicide in a lesser degree than that charged."

182 Conn. 66, 71, 437 A.2d 836, cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1980), citing *State* v. *Rodriguez*, 180 Conn. 382, 405, 429 A.2d 919 (1980). "[H]aving been given notice of the most serious degree of culpable intent by the murder indictment, [the defendant] is implicitly given notice of those lesser included homicides that require a less serious degree of culpable intent." *State* v. *Rodriguez*, supra, 405. We conclude, therefore, that the trial court did not deprive the defendant of his right to notice by instructing the jury, even absent a request by either party, on the lesser included offense of manslaughter in the first degree.

IV

The defendant next claims that the trial court improperly compelled the defendant to begin trial in prison clothes and required the defendant to be shackled during trial without justifying the use of restraints on the record. The defendant argues that the trial court thereby violated Practice Book § 967[14] and his rights under article first, § 8, of the Connecticut constitution and the fourteenth amendment to the United States constitution.[15] We find no merit in the defendant's claims.

" 'The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. . . . The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.' *Estelle* v. *Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126, reh. denied, 426 U.S. 954, 96 S. Ct. 3182, 49 L. Ed. 2d 1194 (1976). In order to implement that presumption, 'courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of

[11] Practice Book § 967 provides in relevant part: "An incarcerated defendant . . . shall not be required during the course of a trial to appear in court in the distinctive attire of a prisoner or convict."

[15] See footnote 7.

criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).' " (Citation omitted.) *State* v. *Woolcock*, 201 Conn. 605, 613, 518 A.2d 1377 (1986); see also *State* v. *Tweedy*, 219 Conn. 489, 505, 594 A.2d 906 (1991).

## A

A defendant may not be compelled to stand trial in prison clothes. *State* v. *Williamson*, 206 Conn. 685, 704, 539 A.2d 561 (1988). This right derives from and reinforces the presumption of innocence. *Estelle* v. *Williams*, supra, 425 U.S. 501.

The following additional facts are necessary for resolution of this issue. Before the defendant's trial began, the trial court noted on the record that the defendant was appearing in "institutional clothing" despite having been given a twenty-four hour continuance to procure other clothing. The defendant's counsel responded that the defendant had procured other clothing, and that the defendant also had been informed that other clothes were available in the public defender's office. The defendant's counsel then indicated that the defendant, nevertheless, "was opting to wear his institutional clothing." The court concluded: "That is his choice and his election. He's agreed to do that. Just as long as it is clear on the record that is his choice."

The defendant then made a statement for the record. The defendant stated that his mother had sent him some other clothes, but they did not fit. The defendant continued: "Plus I wanted to state for the court that right now I want to go to trial." Finally, the defendant stated: "I'd like to have my own clothes. But them clothes . . . ."[16]

---

[16] The defendant was interrupted by the trial court and did not complete this sentence.

" '[T]he failure to make an objection to the court as to being tried in [prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.' " *State* v. *Williamson*, supra, 206 Conn. 704, quoting *Estelle* v. *Williams*, supra, 425 U.S. 512–13. Although the defendant indicated that he would prefer to have his own clothes, the defendant did not object to beginning trial in prison clothing. In fact, the defendant's counsel indicated that it was the defendant's choice to wear prison clothes. Furthermore, despite the court's bringing the issue of the defendant's prison clothes to the defendant's attention, the defendant stated that he wanted his trial to begin immediately. We cannot conclude that the trial court compelled the defendant to begin trial in prison clothes. The trial court, therefore, did not violate the defendant's constitutional rights or violate Practice Book § 967.

B

"As a general proposition, a criminal defendant has the right to appear in court free from physical restraints. . . . Grounded in the common law, this right evolved in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtrooom." (Internal quotation marks omitted.) *State* v. *Tweedy*, supra, 219 Conn. 505. "The negative connotations of restraints, nevertheless, are without significance unless the fact of the restraints comes to the attention of the jury." Id., 508.

The following additional facts are necessary for resolution of this issue. The defendant filed with the trial court a motion for rectification asking the trial court to "specify on what occasion two jurors were present in the courtroom when the defendant was in handcuffs."

The trial court responded that: "The only information brought to the court's attention about the defendant being seen in handcuffs was that he had been seen, handcuffed, by two of the state's witnesses."

The defendant attempts to rest his claim solely on his own statement at sentencing that jurors had seen him shackled. Such a statement, however, does not provide evidence that the jury saw or otherwise knew of the defendant's restraints. Id., 507 and n.14 (defense counsel's claim that defendant's restraints were visible from jury box was not appropriate offer of proof to substantiate claim). Because there is no evidence in the record that jurors saw the defendant in restraints, we find no merit in the defendant's claim that he was denied a fair trial.

V

The defendant next claims that by refusing to grant the defendant a continuance before trial the court denied him due process of law and a fair trial under article first, § 8, of the Connecticut constitution and the fourteenth amendment to the United States constitution. The defendant also claims that the trial court improperly refused to grant him a continuance in order to replace counsel before sentencing. We find no merit in the defendant's claims.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's decision will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge*

*at the time the request is denied.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hamilton*, 228 Conn. 234, 239–40, 636 A.2d 760 (1994).

### A

The following additional facts are necessary to a resolution of the defendant's claim that the trial court denied him a fair trial by refusing to grant a continuance before trial. On the day that jury selection began, September 14, 1993, the defendant requested time to study his case and to give his attorney the names of his witnesses. The defendant stated that he had not had access to his legal papers and had not been able to telephone his attorney. The defendant also stated, however, that because the case was then four years old, he had been ready to go to trial numerous times. Moreover, he told the court, "right now I want to go to trial."[17]

In considering the defendant's motion, the court asked the defendant's counsel if he was prepared to go to trial. The defendant's counsel responded that he had been assigned the case several years earlier, that he was prepared and had conducted an independent investigation, and had met with the defendant the previous day and at an earlier time for a pretrial. He also noted, however, that the defendant had indeed been unable to respond to his letters or to telephone him.

[17] The defendant argues that, even though he acknowledged at his sentencing that he agreed to proceed with jury selection on September 14, 1993, his acquiescence was based on a representation that counsel would request a continuance at a later date if his legal materials were not provided. The representation to which the defendant refers, however, was not on the record and nothing indicates that it was a circumstance present before the trial court when it denied the defendant's request for a continuance. In our review of the trial court's denial of the defendant's request for a continuance, we must consider only the circumstances existing when the trial court made its ruling, particularly the reasons presented at the time the request is denied. *State* v. *Hamilton*, supra, 228 Conn. 240.

In denying the defendant's motion for a continuance, the trial court noted that the defendant's counsel would have the opportunity during the next day of jury selection to confer with the defendant. The court also stated that it would see that the defendant had access to his legal papers. Considering the court's stated reasons, as well as the information presented by the defendant and his counsel, we conclude that the trial court did not arbitrarily deny the defendant's request for a continuance. The defendant's case was four years old, his counsel has been assigned the case two years before trial and had conducted an independent investigation, the defendant requested the continuance as jury selection was about to begin, and the defendant stated that he wanted to begin trial immediately. We conclude that the trial court did not abuse its discretion.

B

The following additional facts are necessary to a resolution of the defendant's claim that the trial court improperly refused to grant him a continuance in order to replace counsel before sentencing. At his sentencing, on November 12, 1993, the defendant requested the court to postpone his sentencing so that he could have an attorney present who would assist him on appeal. The court denied the defendant's request stating that the defendant had no right to appeal until he was sentenced. We conclude that the court did not abuse its discretion in denying the defendant's request for a continuance because the defendant had ample time to acquire new counsel for the purpose of appealing his convictions.

VI

The defendant claims finally that his remarks at sentencing amounted to a pro se motion for a new trial

pursuant to Practice Book § 902,[18] and that the court improperly denied the motion. Because our review of the record demonstrates that the defendant did not make a motion for a new trial at his sentencing, we do not review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[18] Practice Book § 902 provides in pertinent part: "Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interests of justice. . . ."

