[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This concerns two petitions for writ of habeas corpus filed by the petitioner, Kenneth Prutting. Each petition challenges a separate conviction. Both allege ineffective assistance by trial counsel, Dante R. Gallucci, and the petitions were consolidated for purposes of hearing. A hearing on the consolidated petitions opened on July 30, 1998 and concluded on July 31st, when both parties rested.
 II
The petitioner was the defendant in a criminal case entitledState v. Kenneth Prutting, No. CR89-44503 in the Superior Court for the Judicial District of Fairfield of Bridgeport, charged with murder, attempted murder. attempted assault in the first degree, carrying a pistol without a permit and criminal possession of a pistol. While awaiting trial on these charges, CT Page 13807 the prisoner escaped. He was subsequently recaptured and charged with escape from custody, in violation of General Statutes § 53a-171. The petitioner was convicted after the trial on the escape charge and on August 14, 1992 was sentenced to 10 years imprisonment. He was later convicted, after trial, of manslaughter in the first degree in violation of General Statutes § 553a-55(a)(3), carrying a pistol without a permit, in violation of General Statutes § 29-35 and 29-37 (b), and criminal possession of a pistol, in violation of General Statutes, Section 53a-217. On November 12, 1993, the petitioner was sentenced to a term of twenty years imprisonment on the manslaughter count, five years for carrying a pistol without a permit and five years for criminal possession of a pistol, said sentence to be served consecutively for a total effective sentence of thirty years, to be served consecutive to the sentence imposed for the escape. The petitioner appealed his conviction on the escape charge to the Appellate Court, which affirmed the conviction, State v. Kenneth Prutting,37 Conn. App. 901. The petitioner also appealed his conviction for manslaughter. That conviction was affirmed, State v. KennethPrutting, 40 Conn. App. 151, cert. denied, 236 Conn. 191.
 III
The incident giving rise to the plaintiff's conviction of manslaughter occurred on September 23, 1989. The petitioner and his brother, Jimmy, were at the R Place Cafe in Bridgeport. An argument broke out. Someone hit Jimmy with a pool cue. The petitioner hit the bartender with a beer bottle. The petitioner left. Moments later someone fired shots from the front door. One or more people within the premises fired shots. John, "Johnny Joe", Fitzmorris was shot and killed. The petitioner fled to Massachusetts. The petitioner was not arrested for three or four weeks. Following his arrest the petitioner gave a statement to the police, in which he stated he had been at the bar at the time of the shooting; had had a gun in his possession and had fired the gun when in the bar and from outside into the bar. At the time of the trial the petitioner testified he'd had no gun at the time of the shooting. At the time of trial, three witnesses. Smaga, Harron and Messenger, testified that the petitioner was the shooter.
With regard to the manslaughter conviction, the petitioner alleges that trial counsel provided ineffective assistance in that he failed to prepare for trial by failing properly and CT Page 13808 adequately to determine and develop the petitioner's version of the facts; adequately to investigate the relevant facts; interview the relevant witnesses; failed to present defensive evidence or theories available to the petitioner; and failed properly to contradict or discredit damaging evidence presented by the state.
 IV
With regard to the escape conviction, the petitioner reiterates the allegations of failure properly and adequately to prepare for trial and alleges in addition that trial counsel failed adequately to explain the petitioner's "5th amendment right of self-incrimination as it applied to petitioner's decision not to testify in his behalf."
Both the petitioner and his trial counsel testified at the habeas hearing. The petitioner's claims of ineffective assistance of counsel focused largely on trial counsel's failure to call certain individuals as witnesses to testify at his two trials, or even to interview certain of them; counsel's failure to introduce at the trial the entire transcript of Theresa Smaga's probable cause hearing testimony; counsel's allowing certain witnesses and jurors to see the petitioner in shackles; counsel's failure to move for a new trial at the conclusion of the trial on the murder charge; failure by counsel to make timely application for sentence review and modification; failure by counsel to move for certification to appeal the appellate court's opinion affirming the petitioner's conviction on the escape charge.
 V
A habeas petitioner claiming a deprivation of his constitutional right to effective assistance of counsel has the burden showing that (1) the performance of his counsel was "deficient" in that it was outside the range of reasonable, professional assistance of a competent criminal trial or appellate lawyer and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different.Strickland v. Washington, 466 U.S. 668, 687-94. 104 S.Ct. 2052,80 L.Ed.2d 674 (1984).
A court deciding an ineffective assistance of counsel claim CT Page 13809 need not address the question of counsel's performance if it is easier to dispose of the claim on the grounds of insufficient prejudice, Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988).
To establish that trial counsel's performance was deficient, so as to satisfy the first prong of the Strickland test, the petitioner must establish that his counsel made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the sixth amendment . . . The petitioner must show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances . . . We will indulge a strong presumption that cousel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy, Johnson v. Commissioner of Correction,36 Conn. App. 695, 701, 702.
Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The burden of proof is on the petitioner to show that his trial counsel's performance fell below that standard, Johnson v. Commissioner of Correction, 36 Supra, at 703.
 VI
Applying the standards of Strickland and its progeny to the petitioner's claims, the court concludes that the petitioner has fallen far short of meeting his burden of persuasion. The petitioner has demonstrated neither that trial counsel's performance was deficient nor that but for trial counsel's unprofessional performance there exists a reasonable probability that the result of either trial would have been different.
As to the escape trial, the petitioner claims that trial counsel failed to call two witnesses, participants with the petitioner in the incident that led to the escape charge; failed adequately to advise the petitioner regarding his fifth amendment
rights with reference to self-incrimination; and failed adequately to advise the petitioner regarding his right to sentence review.
The petitioner did not testify at the escape trial, and CT Page 13810 presented no witnesses. Trial counsel, having discussed the matter with his client, concluded that the only viable defense to the escape charge was that of necessity. Trial counsel believed that petitioner's testimony would be needed to establish the defense of necessity, but his taking the stand would open his client to impeachment by the prosecutor. Trial counsel made an offer of proof to the trial court, which disallowed the necessity defense. At that point trial counsel believed that said action by the trial court gave the petitioner a solid ground for appeal, and that, given the trial court's ruling disallowing the defense of necessity, there was virtually nothing to be gained from the petitioner's testimony. Trial counsel felt there was much to be lost by having the defendant testify, as it would allow the prosecutor to impeach him with his prior felony convictions and with questions regarding the petitioner's failing to turn himself in to the authorities. As to the two prisoners whom petitioner wished to have testify, one indicated he would not cooperate; once the necessity defense was disallowed, the reason for calling the two, in the judgment of trial counsel, ceased to exist. After explaining his reasoning to his client, trial counsel elected to rest, following the state's case, and aim for reversal on appeal.
The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that trial counsel failed adequately to advise him regarding his rights under Amendment Five of the United States Constitutiontion. Trial counsel's decisions and actions during the escape trial were in the exercise of his professional judgment and fell within the range of competent representation. The petitioner has failed, to establish, by a fair preponderance of evidence, that trial counsel's representation in the escape trial (CR92-73828) was ineffective.
The petitioner's remaining claims with regard to trial counsel's allegedly ineffective assistance in the course of the escape trial and its aftermath are meritless. Trial counsel testified that he did not move for certification to appeal the Appellate Court's affirmation because in his professional judgment there were no grounds to petition for certification. With regard to petitioner's claim that trial counsel had failed timely to apply for sentence review, the respondent introduced evidence that such application was timely made. Trial counsel testified that the state had made what counsel considered an extraordinarily favorable offer to settle the case, and that his client had elected to go to trial. The petitioner at the time of CT Page 13811 the habeas hearing denied having been made aware of said offer, but failed to persuade the court that trial counsel failed in any way to discharge his obligations to make the petitioner aware of this offer or any other developments in the course of plea negotiations at either trial.
 VII
With regard to the murder trial (CR89-44503), the petitioner's claims of ineffective assistance of counsel focus largely on the alleged failure of trial counsel to call as witnesses or, in some cases, even to investigate, certain individuals whose testimony the petitioner believes would have tended to exonerate him.
Three of those witnesses, Ann Marie and Victor Stewart, and Thomas Prutting, a brother of the petitioner testified at the habeas hearing. The Stewarts, having heard shots at the time of the incident giving rise to the petitioner's conviction on the manslaughter charge, looked out their apartment window and observed three or four men, two holding pistols, whom they described to police. Victor Stewart picked three photographs from photo arrays shown him by the police as looking like the men he'd seen. Included among the three identified was a photograph of the petitioner. However it is the petitioner's contention that his description did not match the description of the two individuals holding pistols, which would reinforce petitioner's contention that he had no pistol at the time of the incident, and that a companion or companions of his fired into the R Place Cafe. Trial counsel testified that his review of the Stewarts' statements persuaded him that the testimony of both Victor and AnnMarie Stewart would have been harmful to his client, their descriptions tending to show that the petitioner was one of the two "short" individuals who'd they'd observed with pistols in their hands.
At the habeas hearing. Thomas Prutting testified that near midnight on the night in question, he received a telephone call from the petitioner, who asked Thomas to pick him up at the victim's house (directly across the street from the R Place Cafe). Thomas did so, both brothers drove around searching for their brother Jimmy; they then went to the Shamrock Pub, encountered Theresa Smaga, had an argument with her, then drove to Thomas' residence. The petitioner then left. The petitioner felt that Thomas' testimony would be helpful to him, in that it tended to show that petitioner, in going to the victim's CT Page 13812 residence following the shooting, did not know the victim had been shot; and that in the encounter with Smaga she did not mention the shooting, whereas she subsequently identified the petitioner as the shooter.
Trial counsel testified that at the time of trial, the state, inexplicably, had not raised the issue of the petitioner's flight with its implication of consciousness of guilt. Trial counsel feared that Thomas Prutting's testimony could bring that issue to the fore. Thomas' testimony regarding the encounter with Smaga tended to corroborate Smaga's claim there had been an argument at the Shamrock Pub between her and the petitioner, in which, she claimed, petitioner warned or threatened her. Trial counsel, in the exercise of his professional judgment, concluded Thomas Prutting's testimony would likely be more unfavorable than favorable to the petitioner.
Having heard the testimony of AnnMarie and Victor Stewart and of Thomas Prutting and reviewed their respective statements to the police, the court concludes that trial counsel's decision not to call these individuals as witnesses fell well within the range of competent representation and that the petitioner has failed to establish, by a fair preponderance of the evidence, that trial counsel's failure to call these individuals at time of trial constituted ineffective assistance of counsel.
The petitioner also claims that trial counsel failed to call several other witnesses land in some instances, that counsel failed to investigate what such individuals might have testified. The content of such witness' testimony remains speculative. We have only the petitioner's testimony as to what he thinks such witnesses would have testified and the value of what these witnesses would have testified to, remains a matter of conjecture.
The petitioner cites Carlos Collazo: as a witness whom trial counsel failed to call. The petitioner asserts that Collazo could have testified that petitioner and Smaga's boyfriend, and Smaga engaged in a fight at Collazo's house several weeks before the shooting, which would show a motive for Smaga's false testimony at trial that the petitioner shot the victim. Trial counsel conceded in his testimony that if Collazo testified that there had been a fight between the petitioner and Smaga's boyfriend, such testimony might have been of some use to impeach Smaga's credibility. Counsel testified as to the efforts by his office to CT Page 13813 subpoena Collazo and indications by Collazo that he wanted nothing to do with testifying, the difficulty counsel anticipated in obtaining a capias to bring in Collazo and the concern counsel had with what Collazo, as reluctant or even hostile witness might say. A defendant is entitled to competent pretrial investigation,Ostolaza v. Warden, 26 Conn. App. 758, 765, but counsel need not track down each and every lead, Id. The court concludes that trial counsel's performance with regard to investigating as to what Carlos Collazzo might have testified, did not fall below the level of reasonably competent performance required of trial counsel, Siemon v. Stoughton, 184 Conn. 547, 554. The court concludes that trial counsel's failure to call Carlos Collazo as a witness does not constitute ineffective assistance of counsel. Moreover, the petitioner has failed to persuade the court, by a fair preponderance of the evidence, that the alleged testimony of Collazo, assuming Collazo testified precisely as posited by the defendant, was such that the failure of trial counsel to call Collazo as a witness prejudiced the petitioner.
The petitioner asserts he wanted trial counsel to call as witnesses three individuals sitting at a table with Theresa Smaga in R Place at the time of the shooting, including Stacey Gless, Al Acatulo and Dave. Petitioner claims these individuals could testify that at the time of the shooting Smaga was pulled to the floor where it was impossible for her to see the shooter. Trial counsel testified that his review of Stacey Gless' statement to the police revealed that, while Gless stated that Smaga had been pulled to the floor, Gless also stated that the petitioner was the shooter; that Al stated only that he'd pulled Smaga to the floor when the shooting started, which Smaga also stated. Trial counsel's recollection was that the statement of the third individual at the table offered nothing useful to the defense.
The petitioner also claims he wanted his father, Donald Prutting, called as a witness and that his father could have testified that following the shooting petitioner had called his father from the victim's house and (mistakenly) told his father that Jimmy had been shot, which testimony, petitioner asserts, would show the jury that "individuals were shooting back at us" not as "the jury was led to believe", that "just me any my brother had guns and . . . [that] we was the only ones shooting." (Habeas Transcript. July 30, 1998 p. 42). Subsequently the petitioner added that his father could testify that the petitioner left the house with two individuals who in fact "had the gun" (Habeas Transcript July 31, 1998, p. 40). The court CT Page 13814 concludes that if such were to be the testimony of Donald Prutting it would in no way be helpful to the petitioner. Trial Counsel testified that Donald Prutting had been involved in the surrender to police of a firearm, which the petitioner had agreed to arrange to be turned over to the police. Trial counsel became aware that ballistics tests showed that this was not the firearm used in the shooting. Trial counsel was fearful of alerting the state that weapons might have been switched and did not wish to place Donald Prutting in a position where he'd face the alternative of giving testimony harmful to his son or himself, or perjuring himself. The court is satisfied that trial counsel's decision not to call Donald Prutting was in the exercise of competent representation and did not constitute ineffective assistance of counsel.
The petitioner also wanted trial counsel to call Amber Remere, who, petitioner claims, could testify that the petitioner in his flight to Massachusetts, was accompanied by two individuals who had a gun and wore clothing including a black sweatsuit. Trial counsel testified that in his judgment this witness' testimony would go to the petitioner's flight to Massachusetts, with its inference of consciousness of guilt, which the state had ignored. Counsel concluded that the witness testimony could be most unfavorable to the petitioner.
Based on the evidence presented the court concludes that trial counsel's failure to call as witnesses in either trial, the individuals named by the petitioner, did not constitute deficient performance by counsel, nor did such failure prejudice the petitioner.
The petitioner's remaining claims can be dealt with briefly. The petitioner failed to introduce at trial the entire probable cause testimony of Theresa Smaga, which, the petitioner claims, would have highlighted for the jury numerous inconsistencies with Smaga's trial testimony. The record shows that trial counsel vigorously questioned Smaga, seeking to impeach her credibility and used her probable cause testimony to demonstrate inconsistency with Smaga's trial testimony.
The petitioner claims that trial counsel allowed two witnesses, and jurors, to view petitioner in shackles. The claim was raised previously on appeal and was found by the Appellate Court to be without merit. CT Page 13815
The petitioner claims that trial counsel failed to move for a new trial, following petitioner's trial which resulted in the manslaughter conviction. Trial counsel testified that in his professional judgment there were no grounds on which to base a motion for a new trial. The court finds this decision by trial counsel to be well within the bounds of competent professional judgment.
 VIII
Based on the evidence and testimony presented, the court concludes that the petitioner has failed to establish, by a fair preponderance of the evidence, that the acts or omissions of trial counsel, taken singly or in the aggregate, constituted ineffective assistance of counsel, in either of the trials at issue.
Accordingly, the petitioner's request for relief are denied and both petitions. CV 94 0356047, and CV 96 0394045, are dismissed.
By the Court,
Downey, J