STATE OF CONNECTICUT *v.* JAMAR MCKNIGHT
(AC 16683)

Landau, Spear and Daly, Js.

Argued November 7, 1997—officially released February 10, 1998

*Dante R. Gallucci,* special public defender, for the appellant (defendant).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, *Donald A. Browne,* former state's attorney, and *Cornelius J. Kelly,* assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Jamar McKnight, appeals from the judgment of conviction, rendered after a jury

trial, of murder in violation of General Statutes § 53a-54a (a). The defendant claims that the trial court violated his right of confrontation under the sixth amendment to the United States constitution and the constitution of Connecticut, article first, § 8, by refusing to permit him to cross-examine a state's witness concerning a prior inconsistent statement.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of August 1, 1993, at the Marina Village apartments in Bridgeport, Sadie Harp told a neighbor, Samantha Henderson, that she was angry with her former boyfriend, Fernandez Jackson, and was going to have her cousins, the defendant and Akida McKnight, kill him. Shortly thereafter, a friend of Harp's, George Wright, drove Harp to the McKnights' home on Lafayette Street in Bridgeport. Harp later left with Akida McKnight and the defendant.

Wright drove Harp and the McKnights back to an area in Marina Village where Jackson might be found. They located Jackson, who was outside conversing with Derrick Colson and Ronald Reed. Wright dropped off the passengers a short distance from where Jackson was standing. Colson observed that the defendant was brandishing a gun and warned Jackson to run. Harp tried to prevent the defendant from shooting Jackson

---

[1] "The right to confrontation is fundamental to a fair trial under both the federal and state constitutions. *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Jarzbek*, 204 Conn. 683, 707, 529 A.2d 1245 (1987) [cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988)]; *State* v. *Reardon*, 172 Conn. 593, 599–600, 376 A.2d 65 (1977). It is expressly protected by the sixth and fourteenth amendments to the United States constitution; *Davis* v. *Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Pointer* v. *Texas*, supra, [403]; and by article first, § 8, of the Connecticut constitution. *State* v. *Torello*, 103 Conn. 511, 513, 131 A. 429 (1925)." (Internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 122, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996).

by grabbing his arm, but the defendant pushed her away. The defendant fired eight or nine shots at Jackson, causing his death. The defendant then pointed the gun at Colson, who noticed that the gun chamber was empty. Colson chased the defendant for a short distance. Henderson saw that the defendant had a gun in his hand, but she did not see the shooting. Wright saw neither the gun nor the shooting.

The defendant's sole claim on appeal is that the trial court violated his federal and state constitutional rights of confrontation by prohibiting him from cross-examining Colson about a prior inconsistent statement that he made in a companion case. The state objected to the cross-examination claiming that Colson had invoked his privilege against self-incrimination at the prior proceeding, and the court ultimately sustained the objection.

Our examination of the transcript in the prior proceeding reveals that Colson was called to the witness stand and, after the clerk began to swear him in, Colson interrupted, stating: "I don't have no evidence concerning this case. I'm not swearing to anything. I don't have any evidence concerning this case. I just told the gentleman outside this is a ploy to put me on the stand. I don't know nothing about it." Because Colson's attorney was not present in the courtroom, the trial court granted a continuance to permit Colson to consult with counsel. The following day, after Colson had conferred with his counsel, he invoked his privilege against self-incrimination.

At the trial in this case, defense counsel argued that he should be able to cross-examine Colson regarding his prior statement because the statement was inconsistent with Colson's testimony in this case and because it was made before Colson had invoked his fifth amendment

privilege. The state argued that the statement was inadmissible because Colson's subsequent invocation of his fifth amendment privilege was sufficient to protect the prior statement. The trial court sustained the state's objection.

A review of the transcript in this case is helpful in resolving the defendant's claim. Initially, defense counsel asked Colson how he responded in the earlier proceeding to a question about whether he saw who shot Jackson. In sustaining the state's objection, the trial court stated that Colson's statement that he had no evidence in the case is "a lot different" from a statement that he did not see who had shot Jackson. The court stated: "Well, the answer to [whether Colson saw who shot Jackson] has got to be, because it's cross-examination and I presume impeachment purpose, it's got to be directly related to that question and answer. What you've just given me is a protestation . . . . [The statement] doesn't deal directly with the subject other than the blanket statement that 'I don't know anything about this thing' . . . . The fact remains that I haven't seen any evidence to impeach him with the question that you have asked him." These statements evidence the court's concern that the prior statement was not necessarily inconsistent with Colson's testimony in this case. Defense counsel then proposed another question that he intended to ask, namely, whether Colson told anyone that he had no evidence about the case. The court told defense counsel that "you're just isolating on a preamble statement that he was asked before he asserted his fifth amendment right. . . . From the moment he took the stand his protestations were about his testimony . . . the judge was concerned with his fifth amendment right and his right to counsel . . . ." The court concluded that the prior statement must be considered in its context and that it was within the purview of the privilege against self-incrimination.

" 'The primary interest secured by the confrontation clause of the sixth amendment is the right to cross-examination. *Douglas* v. *Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); *State* v. *Randolph*, 190 Conn. 576, 591, 462 A.2d 1011 (1983); *State* v. *Wilson*, 188 Conn. 715, 720, 453 A.2d 765 (1982).' *State* v. *Milum*, 197 Conn. 602, 608, 500 A.2d 555 (1985)." *State* v. *Laccone*, 37 Conn. App. 21, 30, 654 A.2d 805 (1995), appeal dismissed, 235 Conn. 746, 669 A.2d 1213 (1996). "A claim of undue restriction on cross-examination ordinarily involves a two-pronged analysis: (1) whether the constitutional standard has been met; and (2) if so, whether the court nonetheless abused its discretion." (Internal quotation marks omitted.) *State* v. *Torrice*, 20 Conn. App. 75, 87, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989). " 'In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of witnesses. *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) . . . .' " *State* v. *Valentine*, 240 Conn. 395, 407, 692 A.2d 727 (1997), quoting *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

"The confrontation right, however, is not absolute and is subject to reasonable limitation. . . . The extent of cross-examination beyond that necessitated by the constitution rests within the discretion of the trial court. . . . Therefore, our courts first determine whether the defendant's cross-examination satisfied the sixth amendment standards as enunciated in *Davis* v. *Alaska*, supra, 415 U.S. 318. If so, [t]he general rule is that further restrictions on the scope of cross-examination are within the sound discretion of the trial judge." (Citations omitted; internal quotation marks omitted.) *State* v. *Laccone*, supra, 37 Conn. App. 30.

Our decision in *Laccone*, is instructive. In *Laccone*, the defendant argued that the trial court improperly "excluded a letter written by a state's witness and thereby restricted cross-examination of that witness on an issue directly related to her truthfulness . . . ." Id., 23. The defendant argued that exclusion of the letter violated his right to confront and cross-examine witnesses as guaranteed by the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We stated that the threshold inquiry in addressing the defendant's claim was whether the defendant's cross-examination of the witness satisfied the principles enunciated in *Davis* v. *Alaska*, supra, 415 U.S. 318. Accordingly, we will consider, as we did in *Laccone*, whether the defendant was permitted to expose to the jury facts from which it could appropriately draw inferences relating to Colson's reliability.

As in *Laccone*, the defendant in this case was permitted to explore Colson's character for truthfulness. On cross-examination, Colson testified that he was currently residing at a correctional facility and that he had been convicted of felonies in 1987, 1989 and 1995. The defense asked Colson whether he was a drug dealer at the time of the incident and Colson testified that he was. The defense brought out the fact that Colson spoke to the police about the shooting in December, 1993, and on one occasion prior to that, but that he never told the police that the defendant had shot Jackson. In addition, the defense brought out the fact that Colson had refused to sign the statement that he gave to the police in December, 1993.

In determining whether Colson's cross-examination was unduly restricted, the entire cross-examination must be examined. *State* v. *Valentine*, supra, 240 Conn. 407. Applying this standard, we conclude that the defendant was permitted to expose to the jury sufficient facts from which it could pass on Colson's veracity. See *State*

v. *Laccone*, supra, 37 Conn. App. 31. We are persuaded that the trial court's determination that Colson invoked his fifth amendment privilege, even if improper, did not violate the defendant's rights under the sixth amendment. "The constitutional threshold having been satisfied, it was within the trial court's discretion whether to admit further evidence on that issue." Id.

"In the absence of a violation of the defendant's constitutional rights, the improper invocation of the [fifth amendment] privilege [constitutes] evidentiary rather than constitutional error." *State* v. *Wilkes*, 236 Conn. 176, 187, 671 A.2d 1296 (1996) (improper invocation of privilege by counsel on behalf of witness). "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) Id., 188.

"It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made . . . in other proceedings which contradict those made upon direct examination." (Internal quotation marks omitted.) *Falls* v. *Loew's Theatres, Inc.*, 46 Conn. App. 610, 612, 700 A.2d 76 (1997). "It is the province of the trial court to determine whether a prior statement is in fact inconsistent with statements advanced at trial." *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 249, 655 A.2d 806 (1995). "In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined." (Internal quotation marks omitted.) *State* v. *Laccone*, supra, 37 Conn. App. 28.

It is evident from the colloquy between the trial court and defense counsel that part of the reasoning for the

court's ruling was that it determined that Colson's prior statement was not inconsistent with his testimony at the trial. Colson's prior statement may properly be viewed as a protestation to testifying and not as a statement that he did not know who had shot Jackson. "As in all evidentiary matters, the trial court has broad discretion in passing on the admissibility of prior inconsistent statements." *Drew* v. *K-Mart Corp.*, supra, 37 Conn. App. 249. In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the court's ruling on evidentiary matters. *State* v. *Dwyer*, 45 Conn. App. 584, 585, 696 A.2d 1318, cert. denied, 243 Conn. 910, 701 A.2d 335 (1997). On that basis, we cannot conclude that the trial court abused its discretion in refusing to admit the prior statement.

Even if the trial court's ruling was improper, the defendant has failed to meet his burden of establishing that the ruling constituted harmful error. The defendant contends that because Colson was the only eyewitness presented by the state to identify him as the gunman, the exclusion of Colson's prior statement that he had no evidence regarding the case was sufficient to affect the verdict and thus constituted harmful error. As previously noted, however, there was extensive cross-examination of Colson regarding his credibility. The defendant was able to show that Colson had three felony convictions, was a drug dealer, had delayed in informing the police, was presently incarcerated and had made no written statements implicating the defendant. We are persuaded that the defendant has failed to meet his burden of establishing harmful error.

The judgment is affirmed.

In this opinion the other judges concurred.