STATE OF CONNECTICUT *v.* JASON SHOLA AKANDE
(AC 27755)

McLachlan, Robinson and Pellegrino, Js.

Argued September 19—officially released December 16, 2008

*Katherine C. Essington*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, senior assistant state's attorney, with whom, were *Gail P. Hardy*, state's attorney, and *Kevin M. Shay*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Jason Shola Akande, appeals from the judgment of conviction, rendered after a jury trial, of two counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1)

and (2) and two counts of larceny in the sixth degree in violation of General Statutes §§ 53a-119 (2) and 53a-125b. On appeal, the defendant argues that (1) the third count of the information charging him with forgery in the second degree was defective and failed to charge him with a crime, (2) the court improperly instructed the jury by failing to include in its charge the definition of "issuing or possessing" a forged document and (3) the court improperly admitted into evidence an audiotape containing a message from his brother. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Nelson Estremera, became acquainted at It's A Gee Thang barber shop on Main Street in Hartford. The defendant drove a black Mercedes-Benz and was dressed professionally each time Estremera saw him at the barber shop or around Hartford. The defendant told Estremera that his name was James Limerick. In conversation, the defendant told Estremera that he had a degree in computer engineering, that he was in the process of opening his own insurance business and that if Estremera ever needed any insurance to let him know.

In October, 2004, Estremera's nephew gave him a car, a 1992 Chevrolet Lumina, and Estremera contacted the defendant to obtain automobile insurance for it. Estremera called the defendant, who told him to meet the defendant at what was known as the defendant's "spot," on a street off of Main Street, and to bring his birth certificate, social security card, the title to the car and his driver's license. The defendant arrived in his Mercedes-Benz, and Estremera got into the defendant's car, where the transaction took place. The defendant told Estremera that it would cost only $250 to insure the Chevrolet Lumina because older people pay lower rates. Estremera gave the defendant all of the paperwork, and the defendant told Estremera that he

would contact him within a few days. Once the defendant got in touch with Estremera, the two men met again in the defendant's car in the same spot. Estremera gave the defendant $250 in cash, and the defendant gave him an insurance card. The defendant told him that he would be able to register the car with the department of motor vehicles with this insurance card, and Estremera was in fact able to register the Lumina with no problems.

About one month later, in November, 2004, Estremera needed insurance for another vehicle, an Oldsmobile, and he got in touch with the defendant again to obtain insurance for this vehicle. The defendant told Estremera that he needed to bring the defendant only the title to the new car because he already had all of Estremera's other information on file. The defendant again met with Estremera at the same location as their previous meetings, in the defendant's car, to complete the transaction. The defendant gave Estremera an insurance card in exchange for another $250 cash. This second insurance card had both of Estremera's cars listed on it, which Estremera found odd.

On November 18, 2004, Estremera went to the department of motor vehicles in Wethersfield to register the Oldsmobile. Estremera gave an agent the new insurance card he had received from the defendant. After taking it, the agent indicated that a supervisor would be coming to speak to Estremera. The supervisor questioned him about where he got the card, and eventually the police arrived. Estremera spoke to an officer and later went, of his own volition, to the Wethersfield police department where he gave a written statement and was shown a photographic array, from which he identified the defendant's photograph. The defendant was arrested in February, 2005, and charged with two counts of forgery in the second degree and two counts of larceny in the sixth degree. Following a trial, the jury

returned a verdict of guilty. The court rendered judgment in accordance with the verdict and sentenced the defendant to five years incarceration, execution suspended after time served, followed by three years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the third count of the information, charging him with forgery in the second degree, was deficient and failed to charge him with a crime because the words "which he knew to be forged" were omitted from that count of the state's long form information. Thus, the defendant claims, the failure of the information expressly to include the necessary mental state equates to a failure to charge an offense. We disagree.

Because the defendant failed to preserve his claim at trial by taking an exception to the jury instruction given by the court, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), in which "our Supreme Court reformulated the test of reviewability [and] held that when a defendant fails to preserve his claim at trial he can prevail on that claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Cooper*, 38 Conn. App. 661, 665, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert.

denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996).

The first prong of *Golding* is satisfied because the record in the present case, which contains the long form information and the full transcript of the trial proceedings, is adequate for our review. The second prong is also met because the defendant has implicated his constitutional right to be apprised of the nature and cause of the accusation against him as provided by the sixth and fourteenth amendments to the United States constitution. The claimed constitutional violation does not clearly exist, however, and therefore the defendant's claim fails to meet the third prong of *Golding*.

"When the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). "[I]t is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged . . . ." (Internal quotation marks omitted.) *State* v. *Commins*, 276 Conn. 503, 513–14, 886 A.2d 824 (2005). "The function of the bill of particulars in a criminal case is to provide information fairly necessary to enable the accused to understand and prepare his defense against the charges without prejudicial surprise upon the trial." (Internal quotation marks omitted.) *State* v. *Coleman*, 167 Conn. 260, 269, 355 A.2d 11 (1974). "Where the defendant can demonstrate neither unfair surprise nor prejudice, he cannot claim an infringement of his constitutional right to fair notice of the crimes with which

he is charged . . . ." (Internal quotation marks omitted.) *State* v. *Carter*, 84 Conn. App. 263, 273, 853 A.2d 565, cert. denied, 271 Conn. 932, 859 A.2d 931 (2004), cert. denied, 544 U.S. 1066, 125 S. Ct. 2529, 161 L. Ed. 2d 1120 (2005).

The third count of the amended long form information charged the defendant with "committing Forgery in the Second Degree and charges that in the city of Hartford on or about the fifteenth day of November, 2004, at or near It's a Gee Thang Barber Shop, 2576 Main Street, Hartford, the [defendant], with intent to defraud, deceive or injure another, did falsely make, complete, issue or possess a written instrument, to wit, an Automobile Insurance Identification Card, which was or purported to be an instrument which does or may evidence or create a legal right, interest, obligation or status, and, which was an instrument required by law to be filed in a public office, to wit, the Connecticut Department of Motor Vehicles, in violation of Section 53a-139 (a) (1) and (2) of the Connecticut General Statutes." The defendant filed a motion for a bill of particulars on August 3, 2005, asking that the state particularize its information by stating: "1. With what crime or crimes is the defendant charged, specifying the portion and the language of the statute or ordinance claimed to have been violated? 2. What specific acts, language or behavior, are claimed to constitute the offense or offenses charged? 3. At what specific time did the alleged acts occur? 4. On what specific date did the alleged acts occur? 5. At what specific location did the alleged acts occur?" Also on August 3, 2005, the defendant filed a motion for discovery in which he requested, among other things, "[a] copy of the information and/or substituted information in the above-entitled matter . . . ."

The state's response to the motion for discovery and bill of particulars, which was filed on August 17, 2005,

stated: "A copy of the original information was previously given to defense counsel but an additional copy is included herewith. Further, a copy of the [s]tate's [l]ong [f]orm [i]nformation was provided to the defendant on July 25, 2005." The state's response also stated: "The [s]tate's [l]ong [f]orm [i]nformation, delivered to [the] [d]efendant on July 25, 2005, satisfies the requirements of Practice Book [§§] 41-20 and 41-21."[1]

The statute to which the long form information makes reference, § 53a-139 (a) (1) and (2), expressly includes the mental element that the defendant alleges is missing from the long form information. General Statutes § 53a-139 specifies that to be guilty of forgery in the third degree under the "issues or possesses" alternative, the defendant must have issued or possessed "any written instrument *which he knows to be forged* . . . ." (Emphasis added.)

We find that the long form information and the bill of particulars were sufficiently specific to put the defendant on notice of the crime with which he was charged and to allow him to prepare a defense, as the long form information specified the statutory name of the crime charged, as well as the town, date and particular location of the crime, all of which was information that he had requested in the bill of particulars. The information did not fail to charge the defendant with an offense, and as such there is no constitutional violation.

We also note that the defendant has not alleged that the court did not fully instruct the jury as to the state's burden to prove the mental element of the crime and

---

[1] Practice Book § 41-20 provides: "Pursuant to Section 41-5, the defendant may make a motion, or the judicial authority may order at any time, that the prosecuting authority file a bill of particulars."

Practice Book § 41-21 provides: "The judicial authority shall order that a bill of particulars disclose information sufficient to enable the defendant to prepare the defense, including but not being limited to reasonable notice of the crime charged and the date, time, and place of its commission."

that at no time before or during the trial did the defendant object to the information or the bill of particulars. He also did not move for a more specific statement, for a supplemental bill of particulars or to quash the information. See *State* v. *Coleman,* supra, 167 Conn. 267.

## II

The defendant next claims that the court failed to instruct the jury properly on the elements of forgery in the second degree and that this improper instruction violated his due process rights, as he was deprived of a fair trial. Essentially, he claims that the "issued or possessed" alternative by which a person can be convicted of forgery in the second degree was not sufficiently emphasized to the jury in the court's charge. We find no error.

We begin with a review of the jury instructions at issue in the present case. Following a charge on the elements of the crime of forgery in the second degree, the court instructed the jury as follows: "A person is guilty of forgery in the second degree when with intent to defraud, deceive or injure another he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged which is or purports to be or which is calculated to become or represent if completed a deed, will, codicil, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or two, a public record or an instrument filed, required or authorized by law to be filed in or with a public office or public servant.

"Now, the information charges the defendant with two counts of forgery. The law states that a person is guilty of forgery when with intent to defraud, deceive or injure another, he falsely makes, completes or alters the written instrument. A 'written instrument' is any

instrument or article containing written or printed matter or the equivalent thereof used for the purpose of reciting, embodying, conveying or recording information. A written instrument may be complete or incomplete.

"A 'complete written instrument' is one fully drawn with respect to every essential feature thereof whereas an 'incomplete written instrument' is one that requires additional matter or content to render it complete.

"Forgery may be consummated in any one of the following ways: falsely making a completed written instrument, falsely making an incomplete written instrument, falsely completing an incomplete written instrument, falsely altering a complete written instrument, falsely altering an incomplete written instrument *or issuing or possessing any written instrument that he knows to be forged.* The law in reference to this crime uses the term 'falsely makes,' 'falsely completes,' 'falsely alters' a written instrument." (Emphasis added.)

The court went on to define the term "falsely" and also defined how a person "falsely completes a written instrument" and "falsely alters a written instrument." The court also elaborated on the meaning of "intent to defraud" and "fraudulently." The court completed the forgery charge by instructing: "Thus, the crime of forgery may be committed by falsely making or preparing a written instrument, placing liability on a particular person or entity, or the maker or drawer did not authorize the making or drawing of the instrument; or, two, by falsely inserting or changing matter in an incomplete written instrument so as to make it appear as a genuine, fully authorized, complete written instrument; or, three, by falsely altering any complete or incomplete written instrument by erasure, obliteration, deletion or insertion so as to make it appear genuine and fully authorized.

"Now, if you find that the state has proven beyond a reasonable doubt each of the elements of the crime of forgery in the second degree, then you will find the defendant guilty. On the other hand, if you find [that] the state has failed to prove beyond a reasonable doubt any one of the elements, then you shall find the defendant not guilty. Remember, that goes to both counts of forgery."

This claim was not preserved properly at trial, and the defendant again relies on *Golding* review. Although the record is adequate for our review and this claim implicates the defendant's constitutional right to a fair trial, as "[i]mproper jury instructions on an essential element of the crime charged implicate a fundamental constitutional right"; *State* v. *Cooper*, supra, 38 Conn. App. 666; the claim fails to satisfy the third prong of the *Golding* analysis because the claimed constitutional violation does not clearly exist.

"Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 477, 915 A.2d 872 (2007). The defendant claims that the court improperly instructed the jury by failing to define the "issues" or "possesses" elements of the crime of forgery in the second degree under § 53a-139.[2] The state in turn argues that the defendant's claim fails to satisfy

[2] Under General Statutes § 53a-139 (a), "[a] person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant . . . ."

the third prong of the *Golding* analysis because the defendant waived the claim at trial.

The state argued both in its brief and during oral argument that the defendant is not entitled to *Golding* review of his claim because it was waived at trial when he acquiesced to the content of the charge on two occasions. First, after the jury was charged, the court asked counsel: "All right. Anything about the charge?" Defense counsel said nothing. Second, after the jury requested a written copy of the charging instructions, the court gave each counsel a copy to review overnight before distributing it to the jury. The next morning, the court again asked counsel if they had any comments on the charge or the copies that were to be distributed to the jury, stating: "We had some discussions yesterday. We made some copies of the charge that they asked for, the forgery and the larceny. I—we made copies last night for both sides here. Anybody have any comments on what we want to do with this?" Defense counsel stated, "No, Your Honor."

"A defendant in a criminal prosecution may waive one or more of his or her fundamental rights. . . . In the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial." (Internal quotation marks omitted.) *State* v. *McDaniel*, 104 Conn. App. 627, 633–34, 934 A.2d 847 (2007), cert. denied, 285 Conn. 912, 943 A.2d 471 (2008). We have held that a "defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial." (Internal quotation marks omitted.) Id., 634.

The defendant attempts to distinguish his case from the circumstances in *State* v. *Fabricatore,* supra, 281

Conn. 469, and *State* v. *Brewer*, 283 Conn. 352, 927 A.2d 825 (2007), two cases in which the reviewing court found that the defendant had waived the right to challenge the allegedly improper jury instructions. In *Fabricatore*, the Supreme Court found that the defendant had waived his claim of improper jury instructions where defense counsel at trial not only failed to object to the instruction as given but expressed his satisfaction with the instruction and even argued that the instruction as given was proper. *State* v. *Fabricatore*, supra, 481–82. Similarly, in *Brewer*, defense counsel had requested the instruction in question, and the trial court asked if the charge as read was what had been requested. Counsel answered: "That is correct, Your Honor." *State* v. *Brewer*, supra, 357. The Supreme Court found that it was "not an instance of defense counsel's failure to take exception to the instruction as given . . . but rather . . . a case in which he specifically expressed his satisfaction with that instruction when queried by the trial court." Id., 360–61.

The defendant claims that the actions of defense counsel in the present case do not constitute waiver because mere silence of defense counsel does not equate to waiver. The defendant further asserts that if the failure of defense counsel to take exception to the court's charge was to constitute a waiver of all unpreserved instructional error claims on appeal, a significant body of case law would be overruled. This argument ignores the fact that this situation did not involve mere silence on the part of defense counsel; although initially counsel merely said nothing in response to the court's question of whether he had any comments about the charge, a short time later counsel was given a written copy of the charge as read to the jury, had the opportunity to look at it overnight, and the next morning when asked by the court whether he had any comments about the charge, he responded: "No, Your Honor." We decline

to draw a distinction between defense counsel stating that he had no problem with a jury charge that he specifically requested and defense counsel stating that he had no problem with a jury charge that he had not specifically requested. There is also no difference between counsel stating that he has no comment about the charge and counsel stating that the charge as read was correct. In both cases, we find the objection to be waived.

Indeed, other cases also stress the concept of implied waiver in similar situations. See, e.g., *State* v. *McDaniel*, supra, 104 Conn. App. 634–35 (defense counsel told court twice defendant not contesting validity of what he later claimed was illegal search, court discussed doctrine of implied waiver and concluded constitutional violation did not clearly exist); *State* v. *Arluk*, 75 Conn. App. 181, 191–92, 815 A.2d 694 (2003) (finding implicit waiver regarding court's instruction where element of crime at issue was existence of protective order and court's charge to jury instructed that one of state's exhibits was protective order and defense failed to object); *State* v. *Cooper*, supra, 38 Conn. App. 669 (noting that in some circumstances, criminal defendant may impliedly waive one or more fundamental rights, including right to judicial supervision of entire voir dire, right to be present during trial, guarantees against double jeopardy and right to require state to prove each element of crime, and that "[t]he statements by counsel, which were tantamount to a stipulation . . . therefore amounted to an implied waiver by the defendant"). Furthermore, "[a] constitutional right that has been waived at trial cannot be resurrected successfully on appeal . . . by invoking the *Golding* doctrine." *State* v. *McDaniel*, supra, 632. A review of the record shows that, for these reasons, the defendant cannot satisfy the

third prong of *Golding*, as the constitutional violation did not clearly exist.[3]

## III

The defendant's final claim is that the court improperly admitted into evidence as a prior inconsistent statement an audiotape containing a message that the defendant's brother had left for a police investigator. The defendant claims that the court abused its discretion in admitting the tape into evidence because the statement on the tape did not constitute a prior inconsistent statement. We disagree.

The following additional facts are necessary for the resolution of the defendant's claim. The defendant's brother, Michael Akande, was subpoenaed by and testified on behalf of the state. Michael Akande was asked by the prosecutor if he recalled getting a telephone call from inspector Jay St. Jacques. Michael Akande stated that St. Jacques had called him five times, and he had returned his call four times. The following exchange between the prosecutor and Michael Akande then took place:

"Q. Okay. Do you recall Mr. St. Jacques asking you what—if you knew what your brother's cell phone number was?

"A. That was not the way he put it.

"Q. How did he put it, sir?

"A. Mr. Jay St. Jacques left a message for me saying— say he knew my brother has—has a couple of prepaid cell phones, but he needs a hard line phone.

"Q. I'm sorry?

---

[3] We note that other cases from this court have analyzed the doctrine of waiver separately from the *Golding* analysis when an appellant waives a constitutional right at trial but requests *Golding* review on appeal. See *State v. McDaniel*, supra, 104 Conn. App. 635 n.6.

"A. He needs a line phone for home. That's what he was questioning of me. He said he already knew that he has prepaid phones. . . .

"Q. Did you ever actually talk to him about this?

"A. No. I left a voice mail for him.

"Q. You left a voice mail?

"A. Uh-huh.

"Q. And what did you say on the voice mail?

"A. Yeah. I said . . . 'As you said'—I'm trying to quote myself now—I said, 'As you said, he has a couple of cell phone numbers.' . . .

"Q. Didn't you say, sir, on the message that he had quite a few phones, cell phones?

"A. In corroboration to what Mr. [St. Jacques] said, yes.

"Q. Is that what you said?

"A. In corroboration to what he said—he said. He said he knew."[4]

The state then asked Michael Akande if it would refresh his recollection to play the tape of the message; he stated that it would. The court excused the jury from

[4] The relevance of the number of cellular telephones in the defendant's possession is as follows: Estremera stated that he had received telephone calls from the defendant from numerous different telephone numbers during the course of their dealings and that he had seen multiple telephones in the defendant's car when he had met with him. The last telephone number from which Estremera received a call from the defendant was associated with a company that provides prepaid telephone services throughout the country.

Once the tape recording of Michael Akande's voice mail message was admitted as substantive evidence and played for the jury, the state was able to argue that parts of Estremera's testimony had been corroborated by Michael Akande. Contrary to the defendant's contention, this was not "impeachment of Michael Akande on a collateral matter" but, in fact, related to the credibility of the state's primary witness.

the courtroom and permitted the tape to be played to refresh the witness' recollection outside the presence of the jury. Once the jury was brought back into the courtroom, Michael Akande was questioned again about whether he knew if the defendant had "multiple prepaid phone services . . . ." At this point, however, Michael Akande tried to disclaim any knowledge of whether his brother owned multiple prepaid cellular telephones and responded: "For certainty, no. I do not know. I just corroborated what he said. It's apparent you are not playing his own voice message, you are playing—you are playing mine. That's plain and true. He left a message for me, too. In the message, he said, 'We know he has a couple of prepaid phones.' "

The prosecutor then questioned Michael Akande about precisely what he had told the inspector on the voice mail message. The court again excused the jury and, after hearing arguments from both sides, permitted the tape to be introduced as a prior inconsistent statement, and it was played to the jury.

"The admissibility of evidence, including the admissibility of a prior inconsistent statement . . . is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Internal quotation marks omitted.) *State* v. *Robinson*, 56 Conn. App. 794, 798, 746 A.2d 210, cert. denied, 253 Conn. 904, 753 A.2d 938 (2000). It is well within a trial court's discretion to determine whether two statements are inconsistent. See *State* v. *Laccone*, 37 Conn. App. 21, 29, 654 A.2d 805 (1995), appeal dismissed, 235 Conn. 746, 669 A.2d 1213 (1996); see also *State* v. *Whelan*, 200 Conn. 743, 748 n.4, 513 A.2d 86 ("[w]hether there are inconsistencies between the two statements is properly a matter for the trial court"), cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

A prior written, inconsistent statement can be admitted for substantive purposes if the following conditions have been met: (1) the statement is signed by the declarant; (2) the declarant has personal knowledge of the facts stated; and (3) the declarant testifies at trial and is available for cross-examination. *State* v. *Whelan*, supra, 200 Conn. 753. This doctrine also encompasses prior tape recorded statements that meet the *Whelan* criteria. See *State* v. *Alvarez*, 216 Conn. 301, 313, 579 A.2d 515 (1990).

The defendant's contention is not that the tape-recorded statement does not meet the *Whelan* criteria for admissibility but, rather, that Michael Akande's in-court testimony was not inconsistent with the recorded voice mail message. He asserts that Michael Akande's statement agreeing that the defendant did in fact have multiple prepaid cellular telephones was not a confirmation that he had personal knowledge of that fact and, therefore, was not inconsistent with his trial testimony that he did not know whether the defendant had multiple prepaid cellular telephones.

We conclude that the court did not abuse its discretion in admitting into evidence for substantive purposes Michael Akande's tape-recorded statement as a prior inconsistent statement. Michael Akande freely admitted that the voice on the recorded message was his, and "the requirement that such statements be signed is unnecessary because the recording of [a] witness' voice imparts the same measure of reliability as a signature." *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993). Michael Akande also testified at trial and was available for cross-examination. We cannot say that the court abused its discretion in determining that Michael Akande's in-court statement, which asserted that he did not know how many prepaid cellular telephones the defendant had, was inconsistent with the earlier tape-recorded statement, in which he acknowledged that

his brother did in fact have multiple prepaid cellular telephones. Under these circumstances, we conclude that the court properly admitted the tape for substantive purposes.

The judgment is affirmed.

In this opinion the other judges concurred.